J. E. HAYNER & CO. v. EBERHARDT & SUDENDORF, *et al.*

1. .ANSWER; *Denial; Issues to be Proved.* When a petition alleges the existence of a partnership .and the execution of a mechanics' lien, and a verified answer is filed, denying "each and every allegation, averment and statement contained in the plaintiffs' petition," the existence of the partnership and the due execution of the lien are such issues as must be proved on the trial, to entitle the plaintiff to recover.

2. RECORDING ACTS, *Effect of; Priority of Liens.* The effect of our recording acts is to give priority of lien to a recorded mortgage to secure a preëxisting indebtedness over an unrecorded mortgage given to secure the payment of machinery furnished in the construction of a mill, of which the mortgagee of the recorded mortgage had no notice.

3. PARTY, *Not Joining in Petition in Error; No Complaint.* One of the numerous parties to an action, who does not join as plaintiff in error in the petition in error, will not be allowed to complain in this court about questions arising on the record that he may deem prejudicial to his interest. If he desires such questions reviewed, he must file or join in the filing of a petition in error.

*Error from McPherson District Court.*

ACTION by *Eberhardt & Sudendorf,* to enforce a mechanics' lien. The opinion states the pleadings, proceedings, and the material facts. At the January Term, 1885, the court rendered certain judgments and declared the respective liens thereof. A new trial was refused defendants, *J. E. Hayner & Co.* They bring the case here.

*Smith & Solomon,* for plaintiffs in error.
*Jno. McPhail,* for defendant in error E. Jerrett.

Opinion by SIMPSON, C.: This action was commenced in the district court of McPherson county, on the 4th day of September, 1883, by Eberhardt & Sudendorf, to enforce a mechanics' or material-lien for lumber furnished to S. P. Carlton and W. H. Jamison, on a contract, and used in the erection, altering and repairing of a mill building on lots 35, 37, 39, 75, 77, and 79, in the city of Lindsborg. The amount claimed was $781.82, with interest from August 23, 1882. The petition alleges that the plaintiffs below were "partners under the firm-name of Eberhardt & Sudendorf," and a copy of the lien filed September 21, 1882, with all the indorsements thereon, is set up in the petition. The plaintiffs in error were made defendants in the action, and filed an answer verified by affidavit, in which they deny "each and every allegation, averment and statement contained in the plaintiffs' petition." Among the averments of the plaintiffs' petition are:

"*First:* That the said plaintiffs are, and at the several times hereinafter stated were, partners under the firm-name of Eberhardt & Sudendorf. *Third:* That the said plaintiffs, intend ing to avail themselves of the benefits of the laws of the state of Kansas, securing liens to mechanics and others, and to perfect a lien on said premises hereinbefore described, as a security for the payment of their claim for lumber and other material furnished and used as hereinbefore set out, did, on the 21st day of September, 1882, file with the clerk of the district court of McPherson county, in his office, their claim,

containing a true statement of their demands against the defendants, W. H. Jamison and S. P. Carlton, after deducting all credits and offsets, with the names of the owners of the premises whereon said building, appurtenances and improvements have been erected, altered, and repaired; also, a description of the property to be charged with said lien, verified by the affidavit of C. Eberhardt, one of the plaintiffs, a copy of which statement with all the indorsements thereon is hereunto attached and filed herewith, marked 'Exhibit A,' and made a part of the petition."

I. The first question presented is, what was put in issue by the averments of this petition, and the verified answer of Hayner & Co.? Section 108 of the code provides:

"In all actions, allegations of. the execution of written instruments, and indorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent, or attorney."

One of the issues made by the pleadings was the existence of the partnership of Eberhardt & Sudendorf, which they asserted. Its existence was denied by the sworn answer of the plaintiffs in error.

Another issue made by the pleadings was the execution of the material-lien, asserted by the plaintiffs below in the third paragraph of their petition. They asserted that they had executed a mechanics' lien; and its execution was denied under oath. There can be no question but that the lien set forth is a written instrument within the meaning of § 108 of the code. In *Ferguson v. Scott*, 8 Kas. 376, a sheriff's bond is held to be such an instrument. In *Gulf Rld. Co. v. Wilson*, 10 Kas. 112, a bill of lading is within the statute. In *Reed v. Arnold*, 10 Kas. 102, a note and mortgage is considered within. In *School District v. Carter*, 11 Kas. 445, the section is applied to a school order. In *Washington v. Hobart*, 17 Kas. 275, a promissory note is considered within the section. In *McVay v. English*, 30 Kas. 368, it is said that a chattel mortgage is included. In *Montgomery v. Road*, 34 Kas. 122, a real-estate mortgage is within the operation of the section.

The existence of the partnership and the execution of the lien were in issue, and evidence ought to have been offered tending to prove the partnership, and the execution of the lien; and as there was proof of neither, the demurrer of the plaintiffs in error to the evidence ought to have been sustained. (*Savings Association v. Barber*, 35 Kas. 488.)

II. Knowlton & Dolan became parties to the action by leave of the court, and filed an answer and cross-petition by which they claimed a machinery-lien on lots 35, 37, 39, 75, 77, 79, 81, 83, and 85. They furnished machinery and fixtures used in the mill, of the value of $2,561.40, at divers dates from November 1, 1881, up to and including March 4, 1883. It is a fair statement of the evidence to say that the machinery furnished by Knowlton & Dolan was all delivered and set up about the last of November, 1881. On the 4th of March, 1883, they sent an employé of the house to finish a purifier. On the 20th day of October, 1881, W. H. Jamison, then the owner of the mill, ordered certain machinery from Knowlton & Dolan by written order, in which it is stated:

"All deferred payments to draw 8 per cent. interest per annum from February 1st, 1882; the title to the above-specified machinery remains and is to be in Knowlton & Dolan until the same is fully paid for; and as security for the payment of the above machinery, I agree to execute a mortgage on my mill building, and machinery contained therein, and keep the same insured in some good and responsible company in an amount equal to what is due, and the same to be paid to Knowlton & Dolan in case of fire, as their interest may appear.

(Signed)      W. H. JAMISON."

" We accept the above offer.

(Signed)      KNOWLTON & DOLAN."

In April, 1882, W. H. Jamison sold the mill property to S. P. Carlton, and on May 22d, 1882, Knowlton & Dolan took Carlton's notes for the amount of the machinery claim.

J. E. Hayner & Co. had a mortgage covering lots 35, 37, 39, 75, 77, 79, 81, and 83, executed by S. P. Carlton to them, on the 11th day of January, 1883, to secure a preëxisting debt of $4,000, which Carlton owed J. E. Hayner & Co. for " money collected on goods sold." This indebtedness grew out of busi-

ness transactions entirely separate from the mill.   This mortgage of Carlton to Hayner & Co. was recorded in McPherson county on the 13th day of January, 1883.   The written promise of Jamison to Knowlton & Dolan, to execute a mortgage to them, was not recorded.   The jury found that, at the time the mortgage from Carlton to Hayner & Co. was executed and recorded, Hayner & Co. had no notice of the agreement of Jamison to execute a mortgage to Knowlton & Dolan on the mill property.   This state of facts raises the question of seniority of liens, as between the agreement of Jamison to execute a mortgage to Knowlton & Dolan and the mortgage executed and recorded by Carlton to J. E. Hayner & Co. to secure a preëxisting indebtedness.   In matters of this kind, there is always an equitable assumption that whatever is agreed to be done is to be considered as accomplished; and hence the agreement of Jamison to execute and deliver a mortgage on the mill property to Knowlton & Dolan is to be given the same legal effect in the determination of their rights in this controversy as if the mortgage had been executed.   The mortgage to Hayner & Co. having been recorded, and the mortgage to Knowlton & Dolan not having been recorded, and Hayner & Co. having no notice of it, ordinarily their mortgage takes precedence as a lien.   But it is contended that the fact that the mortgage of Hayner & Co. was to secure a preëxisting indebtedness makes it inferior in lien to that of Knowlton & Dolan, because theirs is first in time, and represents a superior equity in the property bound by the liens of both instruments. Conceding all that is claimed in this respect, that, by the rules of equity as usually administered, a mortgage for purchase-money, or as security for the payment of material furnished in the construction, is a superior equity to one given to secure a preëxisting debt, and yet the proper solution of the question here depends upon the construction and effect of the recording acts of the legislature of this state.   Sections 19 and 20, of the act regulating the conveyance of real estate, read as follows:

"SEC. 19.  Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, proved,

or acknowledged, and certified in the manner hereinbefore pre-scribed, may be recorded in the office of the register of deeds of the county in which such real estate is situated.

"SEC. 20. Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

The evident purpose of these two sections of the statutes is so plainly expressed by the legislature that there is no room for construction, and under any known rule of interpretation there are no exceptions to its operation but such as are therein created, by notice of the existence of a prior mortgage, and probably such notice as possession by some other person than the mortgagor might impart. All outstanding equities of which the mortgagee had no notice at the time of the execution and delivery of the mortgage, are rendered subordinate to its lien by the act of recording. This statute, with some variation of phraseology, has been in force ever since the third year of our territorial existence, and has resulted in a plain, easy and practical method by which title to land and written instruments affecting real estate can be determined by men of ordinary intelligence in almost every case, with that reasonable certainty that is so much to be desired. To hold now that the lien of a recorded mortgage should be postponed in favor of an unrecorded one, for the sole reason that the consideration of the recorded instrument was an antecedent debt, would not only antagonize the policy of the statute, but would misinterpret the plain language by which that policy is expressed. It is a wise state policy that sweeps away the accumulated cobwebs of an obsolete system, that hang about the muniments and are entwined around the chains of the titles to real estate within its borders, and adopts a plain, easily understood, and perfectly just rule of public registration, founded upon the maxim, "First in time, first in right," qualified by notice of the existence of other liens, and the rights of a party in possession. (*Jackson v. Reid*, 30 Kas. 10; *Lewis*

*v. Kirk*, 28 id. 497.) So the real question is, which of these two mortgages was first recorded without notice of the existence of the other? The jury found that the mortgage. of Hayner & Co. was duly recorded, and that they had no notice of the mortgage of Knowlton & Dolan.

III. Another question discussed by counsel for plaintiffs in error is the validity of the mechanics' or material-lien claimed by Knowlton & Dolan. As we gather and understand the facts disclosed by the record, they are as follows : The machinery for which the lien was claimed was furnished by Knowlton & Dolan to Jamison, probably with the knowledge and acquiescence of Carlton, about the last of the year 1881. It was certainly furnished and put up by the 1st of February, 1882, for on that date the mill had commenced running and doing business, and it was practically completed. As under the express terms of the statute, the lien for machinery and fixtures must be filed within four months after the furnishing or putting up of the machinery and fixtures, it was too late. (*Bashor v. Nordyke*, 25 Kas. 222.) But it is contended that the subsequent action of Knowlton & Dolan sometime in the month of May, 1883, by sending one of their employés to the mill at Lindsborg to repair the purifiers, and in repairing them furnished some new or additional fixtures, had the effect to extend the time within which they could file their lien to four months after this work was done. There is another pretext for this assumption, growing out of some evidence tending to show that at the time of the purchase of this machinery, in November, 1881, by Jamison, from Knowlton & Dolan, they had made a guaranty as to the perfection of the machinery, and its entire adaptation to the work designed, and that this work done and the material furnished in May, 1883, were in pursuance of that guaranty, and had the effect to extend the time of the putting up to that date. We do not think so. If by the terms of the contract of purchase the machinery was to be furnished in separate or detached parcels, at stipulated times, the furnishing would not be complete until the delivery of the whole, and the putting up could not be done until all was de-

livered; and probably the time within which a material-lien could be filed would be reckoned from the date of the delivery and putting up of the last portion. But the evidence in the case does not justify any such conclusion. The fair conclusion to be given all the facts bearing upon this question is, that the machinery was furnished in the latter part of the year 1881, and was put in the mill certainly before the 10th of February, 1882, because it was run at that time, and could not have been running if the machinery had not been put in. The subsequent tinkering in May, 1883, ought not to be regarded as fixing the time within which the lien could be filed. We are in great doubt as to when this lien was filed; there is no positive statement in the record regarding it, and there is no indorsement of the clerk showing the date of filing; and as the case will have to be reversed as to Eberhardt & Sudendorf, and as to Knowlton & Dolan, we shall not undertake to determine when it was filed.

IV. E. Jerritt was made a party defendant in the original action, as well as in the petition in error in this court. He answered to the original action, setting up a mortgage for $4,000 on lots 35, 37, and 39, covered by the mill property, given to him by S. P. Carlton, then the owner, on the 17th of May, 1882. The court below held this to be the second lien on the mill property, Eberhardt & Sudendorf being first, Knowlton & Dolan being third, and J. E. Hayner & Co. the fourth. Counsel for Jerritt filed a brief, and insists that the question as between him and Eberhardt & Sudendorf be determined here. While all exceptions are noted in favor of Jerritt, he does not join in the petition in error, and it is doubtful whether, under such a condition of the record, we can consider such questions. Nor does it make any practical difference so far as he is concerned, for if on the new trial which we grant the plaintiffs in error the facts do not justify the lien of Eberhardt & Sudendorf as against the plaintiffs in error, the mortgage of Jerritt would be the first lien, unless it is defeated by some evidence that was not offered or contained in the record of the case as it now stands.

It is recommended that as between the plaintiffs in error, and Eberhardt & Sudendorf, and Knowlton & Dolan, the case be remanded to the district court, with instructions to sustain their motion for a new trial.

By the Court: It is so ordered.

All the Justices concurring.